THE BOARD OF EDUCATION OF THE TOWNSHIP OF MOUNT LAUREL, IN THE COUNTY OF BURLINGTON, PLAINTIFF, v. EDWARD L. GODFREY, JAMES J. LAVERY, WILLIAM H. GODFREY, AND THE MARYLAND CASUALTY COMPANY, A CORPORATION, DEFENDANTS.

Decided April 6, 1938.

For the plaintiff, *Davis & Davis.*

For the defendants Edward L. Godfrey, James J. Lavery and William H. Godfrey, *George B. Evans.*

For the defendant Maryland Casualty Company, *Cecil W. Rotzell.*

JAYNE, S. C. C.   The present motion occasions consideration of the substantiality of certain defenses averred in the answers filed by the defendants.   A perfunctory sketch of the material allegations of the complaint will sufficiently exhibit the relative application and defensive aim of the averments of the answer.

The present action is being prosecuted to recover from the defendants a pecuniary loss which it is alleged the township school district has suffered in consequence of the malfeasance of the defendant Edward L. Godfrey, who officiated as custodian of the funds of the district.

The complaint alleges that on November 4th, 1930, Edward L. Godfrey was elected collector of taxes of the township of Mount Laurel. He assumed the duties of that office on January 1st, 1931. Under date of January 7th, 1932, he and the defendants James J. Lavery and William H. Godfrey executed and delivered to the township a bond in the sum of $12,000 for the faithful performance of the duties of Edward L. Godfrey in the office of collector of taxes. It is observed that the span or period of time intended to be encompassed by the bond is not in anywise expressed in the instrument. Thereafter from January 1st, 1933, until January 1st, 1936, the defendant Edward L. Godfrey and the defendant Maryland Casualty Company executed and delivered to the township a bond and annual supplemental certificates in the sum of $4,000 likewise to secure the faithful performance by Edward L. Godfrey of his duties as collector of taxes during these years. Additionally the complaint declares that Edward L. Godfrey from January 1st, 1931, until January 1st, 1936, functioned as the custodian of the moneys of the school district and in the particulars mentioned in the complaint "knowingly, corruptly, feloniously, fraudulently and illegally" paid out and disbursed from the funds of the school district the certain specified sums of money.

It is contended on behalf of the plaintiff that the bonds given and underwritten by the defendants to insure the faithful performance by Edward L. Godfrey of his duties as collector of taxes of the municipality likewise, by statute, secured the faithful performance by him of his duties as custodian of the school moneys.

The defenses embodied in the answers of the defendants and to which the present motion is addressed, are somewhat numerous. They can, however, be federated and, for the determination of the present motion, so grouped as to constitute the averment of three prime defenses.

Succinctly stated, it is averred:

First (in behalf of the defendants, James J. Lavery and William H. Godfrey) that the bond was unlimited as to time and that upon the acceptance of the bond of Edward L. God-

frey underwritten by the Maryland Casualty Company for the year beginning January 1st, 1933, these defendants were thereby discharged from liability for any official misbehavior of Edward L. Godfrey which occurred after January 1st, 1933.

Secondly (on behalf of all of the defendants), that Edward L. Godfrey as collector of taxes was never designated by the board of education as the custodian of the school moneys of the district.

Thirdly (on behalf of all of the defendants), that all of the disbursements made by Edward L. Godfrey as custodian of school moneys were in pursuance of warrants or orders signed by the president and district clerk of the board of education.

In like order each group of defenses, thus catalogued, will be considered.

It is also to be understood that counsel have submitted a stipulation relative to certain basic and pertinent facts.

The first, then, to be examined are the so-called separate defenses which deny that the bond executed by the defendants Edward L. Godfrey, James J. Lavery and William H. Godfrey, was in effect after January 1st, 1933, and which aver that this bond was discharged merely because it was not annually "renewed" and because the township accepted each year a bond underwritten by the Maryland Casualty Company. A copy of this bond is attached and made a part of the complaint. The duration of the bond is not therein stated. It is indubitably the rule that, in such cases, the obligation, by intendment, is co-extensive with and confined to the official term of the principal about to commence or current at the time such bond comes into existence. Where the words of a bond are wholly uncommunicative of the period of time to be embraced by the bond and the obligation is to secure the good conduct of a person elected or appointed to a public office for which a definite term is then prescribed by law, the irresistible inference is that the sureties intended to remain bound for that term and for that term alone. *Mayor, &c., of Rahway* v. *Crowell,* 40 *N. J. L.* 207; *Citizens' Loan Association* v.

*Nugent,* 40 *Id.* 215; *Peoples' Building and Loan Association* v. *Wroth,* 43 *Id.* 70; *Camden* v. *Greenwald,* 65 *Id.* 458; 47 *Atl. Rep.* 458; 9 *C. J.* 44. The conclusion is that the bond given by these defendants on January 7th, 1932, continued to be legally effectual and obligatory for the remainder of the then current term of office of Edward L. Godfrey as collector of taxes. The mere circumstance that the collector subsequently delivered to the township another bond or bonds with the same or like obligation and condition, does not of itself cancel or discharge the bond previously given to and continuously retained by the township.

These defenses therefore appear to be frivolous.

Next to be considered are those defenses which aver that Edward L. Godfrey as collector of taxes was never designated by the board of education as the custodian of school moneys. Singularly, it transpires that Edward L. Godfrey was not only the collector of taxes but also the treasurer of the township. It is presumed that he presented to the township appropriate bonds relating to his faithful service in each of such offices. The pertinent part of the statute concerning the appointment of the custodian of the school funds is as follows: "The person designated by law as the custodian of the moneys belonging to the municipality in which the school district shall be situate, or the collector, when designated by such board of education, shall be the custodian of the school moneys of such district, * * *." 2 *Cum. Supp., p.* 3230, § 185-185; 1 *Rev. Stat.* 18:5-53. The statute also declares that "the bonds given by said collector or other person for the faithful performance of his duty as such officer, shall be held to cover and secure the faithful performance of his duty as custodian of school moneys, and the bondsmen thereon shall be liable therefor; * * *."

The controversial point at once arises whether Edward L. Godfrey became custodian of the school moneys of the district, *virtute officii,* because he was the person designated by law as the custodian of the moneys of the municipality in which the school district was situate or whether he, as collector of taxes, was designated custodian of the school moneys by the board

of education. These defendants other than Edward L. God-frey, himself, are sureties on the bonds appertaining to his service as collector. Mr. Justice Parker in *Connolly* v. *Smith,* 86 *N. J. L.* 466, 467; 91 *Atl. Rep.* 1034, stated: "By section 185 of the School act, as amended by *Pamph. L.* 1912, *p.* 507, the custodian of school moneys in a municipality is the collector when so designated by the board of education, otherwise he is the 'person designated by law as the custodian of the moneys belonging to the municipality in which the school district shall be situate.' In the case of a township such 'person' is the treasurer."

It is said that in searching the minutes of the board of education for some memorial of the action of the board, it was discovered that Edward L. Godfrey was appointed custodian but the record of this action of the board is barren of any reference to either of the official positions which he then held in the municipality.

Sufficient has been stated to exhibit the truly debatable character of the issue created by these defenses. They are neither so palpably or inherently false or so obviously unsubstantial, idle and frivolous as to warrant the allowance of a rule striking them from the answers.

The third group of defenses deny that the custodian was guilty of any malfeasance in the particulars alleged in the complaint because, as averred, all of the alleged disbursements were made by him on warrants signed by the president and district clerk, presumably in conformity with the mandatory provisions of the statute.

The custodian, under the statute, is required to hold in trust all moneys belonging to the school district and to pay out moneys only on warrants signed by the president and district clerk or secretary of the board of education. Each warrant must specify the object for which it is given and must be made payable to the order of the person entitled to receive the amount named therein. *Pamph. L.* 1928, *ch.* 165, *p.* 328. The custodian is not concerned with the expenditure of the money raised for school purposes or with the application of the moneys to the purpose for which they were raised. *Zim-*

*merman* v. *Mathe,* 49 *N. J. L.* 45; 7 *Atl. Rep.* 674. This subject was also considered by Goldberger, D. C. J., in *Brady* v. *Board of Education of Carteret,* 10 *N. J. Mis. R.* 358; 158 *Atl. Rep.* 747, and by the commissioner of education and by the state board of education in *Board of Education of Borough of Hampton* v. *Melick,* whose conclusions may be found reported in the 1928 volume of School Law Decisions.

The scope of these decisions must not, however, be unjustifiably expanded.

It is to be observed that the present complaint not only alleges that the disbursements made by the custodian were for illegitimate purposes, but also that the custodian corruptly and fraudulently made them with knowledge of the illegal misappropriation of such funds.

The mere circumstance that the disbursements were made on warrants signed by the president and district clerk will not in all circumstances completely absolve the custodian and his sureties from liability. A simple illustration will serve to explode such a notion. Suppose the president and district clerk should corruptly draw a warrant for a large sum of money payable to the custodian and the custodian, well knowing that he was not entitled to the amount named therein, nevertheless signed the warrant and collected the proceeds.

In each answer will be found a denial that the custodian knowingly, corruptly and fraudulently made any improper or illegal disbursements. This third group of defenses is therefore supplementary. They may or may not be availing to the defendants depending upon the circumstances disclosed by the evidence at the trial. The factual circumstances accompanying and surrounding the conduct of the custodian may be largely influential in determining the liability of the defendants on this branch of the case. The motion to strike from the answers the third group of defenses is also denied.

From the conclusions here expressed a rule in appropriate and specific form may be prepared and presented.